Ready to proceed with the first case, which is Fife v. Thinrad. Good morning, your honors. Martin H. Kaplan for the appellant John Fife. If it please the court, it's our view that the district court erred in multiple ways in the dismissal of Mr. Fife's complaint. The basis of our belief goes to the fundamentals of the particular provisions of the exchange act that was cited by the district court. So the district court relied on 15 U.S.C. 78Y to say that Mr. Fife did not have subject matter jurisdiction and had to exhaust administrative remedies. We believe that that's wrong, and we believe that that's wrong for multiple reasons. Under federal rule of civil procedure 12 B1, the allegations of the complaint are deemed to be true. And we pled in great detail that Mr. Fife was never subject to FINRA jurisdiction. He was never, as per the exchange act, a member or an associated person of a member. Why wasn't he an associated person? Because of the definition of what an associated person is. It's clearly within the act and the definitions that FINRA use that the definition specifically says you have to be a member, a person associated with a member, an officer, director, owner of 25 percent or more, and to be able to control. And there's no such factual provision about a person exercising such control. There is, but there's no such allegation and there's no evidence of that. So all you have essentially is FINRA saying we have subject matter jurisdiction. You must, Mr. Fife, respond under rule 8210. And if you don't, we're going to bar you. And that's essentially what happened. But they never had the predicate jurisdiction. You said in 2012, I mean, there's a process for appealing that to the SEC. And in 2012, there's no dispute, right? Your client didn't pursue that process. No, my client didn't pursue it because he didn't, he was advised and believed that FINRA had jurisdiction over him. So if you think about that. I thought he said it wasn't worth his time. Yes, but there was also meaning exactly he has no relevance to FINRA. He never was registered, he didn't work for a broker dealer, wasn't required to be licensed, and that's why he didn't respond. Subsequent to those events, legislative or regulatory adoption rules changes the implication of it. That's number one. And eight, ten years later, the SEC charges that he is a recidivist based on FINRA's allegations against him based on rule 8210. And this brought to the front the question of whether or not they, FINRA, properly exercised jurisdiction over him. Okay, so the consequences changed to him that it became worth responding. I think I understand that. That's true. What was your response, though, to the failure to exhaust his administrator? I don't believe he's required to because, well, again, if you look at 15 U.S.C. 78Y, in that statute, there has to be someone agreed by a final order of the commission. There is no final order, and it's true he didn't appeal. He didn't go through that process, but he never had jurisdiction over him. And that's the essence of what we brought to the court. We sought declaratory judgment that they never had jurisdiction over him. We pled the details as to why we believe- That's part of the process. I mean, if there's not jurisdiction, that's one of the issues to raise before the SEC, isn't it? No, because, again, think about it if you do that. So this is what has to happen. You have to first go through a disciplinary proceeding at FINRA. Then you have to go to the National Adjudicatory Committee of FINRA on appeal. Then you have to appeal to the SEC. That's all very complex processes and very expensive. Now you get to the SEC, and let's assume that the SEC agrees with you and says, yes, you're absolutely right, Mr. Fife. They didn't have jurisdiction, and we're dismissing the case. You can't sue FINRA for your and he has no recourse. So coming to the district court for a declaratory judgment as to jurisdiction is predicated on the fact that in the first instance, if they don't have jurisdiction and the court finds that, everything falls. Now, there's a big distinction between the cases cited by FINRA in the various, in the answering briefs. They cite many, many cases and they supplemented the district court with many, many cases that came out. But in each one of those cases, nobody challenged the jurisdiction of FINRA. Nobody, they were members associated with members or offices, directors, etc. None of those cases have the fact pattern here. We, Mr. Fife, has always denied that they had any jurisdiction over him, and I would urge the court to recognize that from a subject matter jurisdictional issue, you don't lose that issue just because you didn't raise it. If they didn't have subject matter jurisdiction in the first place, then they never had it. So it's your position that because you believe your client was not covered by any of these provisions that conferred FINRA jurisdiction, that he was free to not participate in the process and to the extent he wanted clarity come to the district court? I think he could have come to the district court in 2012, and I think he can come to the district court any time thereafter on the question of subject matter jurisdiction. So who, what rule of law would you urge on us? An individual who believes that there's no subject matter jurisdiction can follow the same path your client followed? Well, anybody can file any course of conduct with the court to seek relief, even if it's misplaced. But I'm not suggesting it's misplaced, because there are record identification of the things that would give jurisdiction. Registration as a broker-dealer, registration as a licensed person, owning 25% or more, being an officer or director, anybody who made an application under those circumstances would get thrown out of court. But it's your position that an individual who is making those allegations is not obligated to go through the self-regulatory process, but can come right to district court and challenge FINRA's jurisdiction? If there is no jurisdiction, if that's the issue, yes sir. And I cite to the FIERRO case- Will a plausible allegation of no jurisdiction get you to federal court? Would you need more? I think you need to recite within your pleading sufficient substantiation. So what you're telling me is a plausible allegation of no jurisdiction would excuse you from participation in the regulatory process until a federal court clarified that issue. I guess that is true, but I point out to the fact that there are no such cases brought in the 50 recognized by- We'll get to that in a minute, but I just wanted to be sure I understand the rule of law that you were urging on us. May I make one other point? Yes, please do. The FIFE, I'm sorry, the FIERRO, F got crossed in my mind, the FIERRO case that this court decided had a very similar molecular structure. In FIERRO, FINRA took jurisdiction to something that the court said it didn't have, the ability to collect its fines. And the application was for declaratory judgment. It was denied on the same basis in the district court. I mean that had to do with whether FINRA had the power to or was authorized to bring a suit to pursue its sanctions. And that was the issue here. There's no dispute that FINRA can bar associated persons. The question is whether it applies to your client. That is true, Your Honor, but the distinction as I see it is in this case what we're saying is that they don't have jurisdiction under the Exchange Act to do this because the parameters of 78Y are limited in respect to FINRA issues. Remember, this is a FINRA matter, not an SEC matter. The conclusion would be different in an SEC matter. This is a FINRA captured matter. They've made a determination on the Exchange Act to assert jurisdiction. We say they don't have it. We believe that that issue is different than challenging a disciplinary matter by saying you didn't do this rule right or that rule right or you overlooked this or overlooked that. We say this is basically a fundamental analysis of the Exchange Act and an analysis to because as I read 78Y, the only way you get the entranceway into being bound by that is if you're an associated person. And if FINRA can say you're an associated person, then they become essentially the prosecutor, the judge, the jury, and the executioner. And the person who's left in that position is helpless because you can't sue them for your costs. All you can do is hopefully win someday in front of the SEC because I assure you, you're not going to win in front of the NAC. That's just not going to happen. So the punchline as I see it for Mr. Fife is that he's victimized by this. I sincerely believe that 78Y doesn't apply to him not being an associated person. And if that's the case, then the district court has to be the one to determine what the scope of the Exchange Act is. And if you look at 78AA and I know that there have been the Supreme Court, the Fifth Circuit, others have the Southern District in Gupta, but there's a distinction here because those are taking exceptions and saying there are exceptions to 78Y. I'm saying you don't get to 78Y. And if you don't get to 78Y, then 78AA governs. And that's what we believe. And we believe that Mr. Fife is looking to this court as it looked to the district court to correct the wrong. Thank you. Mr. Fife's counsel started with a reference to Federal Rule of Civil Procedure 12b1, talking about what the contents of his pleading were. And the courts are crystal clear on this. They will not let a party aggrieved by a finerate disciplinary action just plead a creative cause of action and avoid exhaustion and dismissal of a complaint. I suppose hypothetically, this man was not a registered person. He was not covered by it. But FINRA nevertheless brought him into the whole process. What remedy does he have? His remedy is set forth in Section 15 U.S.C. 78S of the Exchange Act, which explicitly sets forth the process by which FINRA issues a disciplinary action, provides notice. The statute contains the requisite requirements of that notice, which were followed here. And then the statute states that the SEC then has the first avenue of review of a FINRA disciplinary action whenever notice is set forth by FINRA of that disciplinary action. That is to someone who in no way, shape, or form was an associated person or an officer or met the test in any way. Right. So that for that. And now does that comport with due process? It does comport with due process because the Section 78C of the Exchange Act sets forth the that sets forth the requirement that or the ability of FINRA. Supposing in fact the person in question met none of those tests and at the end of the day that was not disputed. They got the wrong person. They thought he was a senior vice president, but he was really an Uber driver. Right. And so the first step in that process is for the person to respond to the FINRA 8210 request, which was issued to Mr. Feiffer. So the Uber driver has to go out and hire a security lawyer? Correct. If you need, if he chooses to proceed with an attorney. And that's why the courts have analyzed this from the perspective of what is set forth in the clear language of the Exchange Act. What is the exclusive review process for any person aggrieved by the action? And then allows that person to appeal it through the SEC and then go to the circuit court. Change the driver. It's a lawyer. Right. Okay. The lawyer meets none of the tests. FINRA comes after the lawyer. The lawyer can't afford to default because it may have or not appear because it may have, you know, collateral responsibility, collateral effects with respect to his professional standing. So you still have to lawyer up and litigate this? That goes to the discretion that's afforded to a regulatory agency. And you have to look at the purposes of the Exchange Act, which is to regulate the industry and protect the investing public. And if that agency makes a determination based upon information before it, that there's a need to request information of the person, and that's why Rule 8210, which is adopted by the SEC and approved by the SEC before it's implemented, allows for FINRA to issue an 8210 request for information to persons that are associated with members, meaning they don't have to consent. That has to be a discretionary determination. Otherwise, you obliterate the purpose of the Exchange Act, which is to make sure that you can appropriately recognize participants in the industry for what they are, not what they claim to be, not because they put themselves on a piece of paper. Otherwise, you would have this whole shadow army of people operating outside the confines of the regulatory scheme and have an ability to manipulate the markets. Remind me, what was it that Mr. Fife did at Gordon that you claim brought him under the ambit of the Act? Well, it's the involvement that Mr. Fife had in the investments into the Gordon firm, which allowed him to control that firm. How exactly did he control the firm? I'm sorry? How exactly did he control the firm? Well, if we're going to dig into the underlying factual issues, which I don't think we should, and I'll talk about that in a second. Just answer my question. Absolutely. You know, I'm controlling this dialogue. If you may not want to participate in it, but please do. Understood. The information FINRA had available to it was that the Gordon firm was essentially low on assets. And Mr. Fife, through his family trust and other investments in that firm, completely changed the nature of the investments that the Gordon firm had been engaging in. There's these pipe investments. I don't fully understand what they are. As a result of which, the Gordon firm started to engage in activities within the regulated markets that caused concern at FINRA. As a result of which, FINRA issued an 8210 request to Mr. Fife as a person that it deemed to be associated with FINRA. Once we get to that point where the 8210 request is issued, FINRA provides notice to Mr. Fife. Ten years ago, they provided notice to Mr. Fife. And his attorneys. He had an attorney involved. They provided notice that there was going to be disciplinary action that was issued against him. And we hear a lot of verbal gymnastics here about how this claim is anything but what it really is. A collateral attack on a FINRA disciplinary action, which is a core regulatory function under the extension. After the default that the penalties change, in other words, when FINRA initially came after him, was he subject to a lifetime ban? Was he subject to a lifetime ban by the SEC? Yeah. I do not know. By FINRA? FINRA issued the ban in the industry. You can appeal any ban you'd like to. Initially, he got like a four month suspension. Is that correct? Correct. It was later changed to a lifetime ban. By the SEC, perhaps. What do you mean perhaps? I'm not understanding the question, Your Honor. I apologize. Didn't he get a lifetime ban? By the SEC after the fact, yes. So it was not by FINRA. I'm sorry. The FINRA discipline of Mr. Fife was a ban, yes. From associating with any member firm of FINRA. Lifetime or number of months? It was not a limited ban. Correct. It was a lifetime ban. Correct. So the first discipline FINRA imposed on him was a lifetime ban? Well, the ban came after issuing the notices required by the act. Yes. What? The ban came after issuing the notice. The first discipline FINRA imposed on him was what? A ban under 9552. For how long? Assuming he does not appeal it lifetime. Pardon me? Assuming he did not appeal it lifetime. Well, he didn't. The first ban was a lifetime ban. Forget about an appeal. Is that right? Correct. And so the SEC just, you're telling me, just reimposed the same penalty? I'm not exactly sure, Your Honor. I apologize on what the current status of the SEC investigations and penalties against Mr. Fife are. We said in FIRA that FINRA lacked authority to bring a judicial action to enforce a fine after it imposed one. How is this case distinguishable? Right. So the distinction in that case is that while involving FINRA, the FIARA case did not involve any regulatory or disciplinary conduct as described in Section 78S of the Exchange Act, which is what triggers the exclusive review process. Under Section 78S and 78Y. And Mr. Fife doesn't address the fact that there's a two-step process here. Section 78S requires you to go to the SEC. And then 78Y requires you to go to the Circuit Court of Appeals where the person resides or the District Court Circuit Court of Appeals in order to address any issue that you have with a disciplinary action issued by FINRA. Your adversary says essentially raising a question of fairness, that if FINRA gets it wrong, you know, he thought he was an associated person, but he can file a complaint that plausibly asserts that he's not, he's required to go through that process with regard to FINRA's proceedings when FINRA has no jurisdiction over him and no authority to compel him to court. Right. And essentially he's arguing for some sort of an irreparable harm analysis with regard to his failure to respond. And requiring a party to pursue administrative remedies does not constitute irreparable harm. That's from Randolph Shepard, Vendors of America v. Weinberger, 795F290, DC Circuit, 1986, where I believe the court was upholding Judge Barrington's decision. And I'd also point the court's attention to the Bennett case, which kind of dismantles all of these arguments quite handily. In that case, the Fourth Circuit reviewed Second Circuit law, Supreme Court law, and all of the other jurisdictions that held, as the court did here in Altman, adopting this, the District Court's decision that District Courts just lack jurisdiction to hear post-enforcement challenges seeking declaratory and injunctive relief related to disciplinary proceedings. Such challenges must proceed in accordance with the statutory scheme. And to the extent that Mr. Fife is making an argument about the jurisdiction of FINRA or its power to proceed, again looking at the Bennett v. USSEC case, 844F3174, at note 4, Bennett in that case argued that the Exchange Act's judicial review provision, quote, and the court there in Bennett held that argument leaps ahead. We decide here whether the District Court had jurisdiction, which depends on the scope of the review scheme. We do not decide the scope of the SEC's jurisdiction or the constitutional legitimacy of ALJ appointments in that case. Questions that go to the merits, which is why we don't discuss the merits in the analysis of whether or the extent to which a party can avoid the exclusive review provisions in the Exchange Act. It is required to proceed. There is clear statutory language. And none of the other factors set forth in the Thunder Basin Court's analysis apply to this situation. Thank you. Thank you. We'll hear rebuttal. Your Honor, he's a lot taller than I am. Sorry. Your Honors, we plead in our complaint in the District Court that Mr. Fife's family trust, which was for the benefit of his wife and his daughter, invested to buy 12.5% non-voting stock. And the FINRA learning is that if you have non-voting stock, it's not controlled by definition. It's just that black and white. And I'm sorry I don't have a case to cite you because I didn't expect to hear this today, frankly, because it was pledged so clearly and it was recited in our briefs. So how 12.5% non-voting stock can be controlled is just mythical. With respect to who's better than the District Court to make this determination under these circumstances? I guess if we said this occurred yesterday rather than in 2012, would it change the analysis? Would it change the fact that this is a question of original jurisdiction? And I must point out that he never participated in their administrative proceeding and they didn't have the right to compel him. That's the essence of what this is about. Because if they didn't have the right to compel him under 78Y, you don't enter it. But Mr. Mitchell cataloged a number of other things which in FINRA's view, in addition to the percentage of stock ownership, other activities, which at least arguably made him subject to the statute. They don't exist. And they are not, he was a customer. The specific legislation in the Exchange Act excludes customers from jurisdiction in FINRA. There's no question he was a customer. We pled that clearly. We pled he's been a brokerage customer for years. That's his business. Now, but that doesn't change that he's not subject to their jurisdiction. So your position is the only relationship he had with Gordon Company was as a customer and as an owner of non-voting stock? Well, he didn't own the non-voting stock, but I will concede that it was his family. So I'm not trying to parse it, but he didn't own it directly. Okay. And again, we must keep in mind that the SEC is not involved in this matter at all. And that's critical here because again, it's a question of fairness. It's a question of can anybody be put in a position that suddenly FINRA says, hey you, come on in. And regardless of whether they have any authority to do that, and if that's the decision of this Court, then it puts all citizens in a position that the Exchange Act will be applied to them in a manner that's inconsistent with what Congress intended. It's quite clear Congress intended to limit the jurisdiction of FINRA to very specific circumstances, and those circumstances don't apply here. And certainly, the circumstances that we contend force the conclusion that they don't have jurisdiction were pled clearly in our complaint. And we would argue under 12b1 should be assumed to be true. And if they're true, then how can they have subject matter jurisdiction? And... So any plausible claim of no subject matter jurisdiction, of no FINRA jurisdiction that would say meet the Rule 11 threshold gets you, in your view, out of this process in the federal court? I would say under circumstances where there's not in this year of being a, within the definition of who they have jurisdiction on, I won't go through the definition again, then they don't have jurisdiction and that person has the ability to do that. And I finally point out that in the many, many dozens of cases cited by FINRA, there's not one case, not one, where the subject matter jurisdiction was challenged, where it was said you didn't have jurisdiction over me. So I understand the concern that the court would have that we don't want to open up the floodgates of frivolous litigation. I certainly understand that. But there were Rule 11 obligations. You're never supposed to draft a pleading as an attorney that's not true. So that's one aspect of it. And the second aspect of it, why hasn't it happened? I'm not, look, we know there's lots of disciplinary actions. There's lots of administrative proceedings. It hasn't happened. Why? Because it's unusual. And maybe, maybe someone in FINRA woke up and said, we can't do this. But that doesn't negate what happened to Mr. Fife. And I urge on the court the fact that just because that assertion without authority of jurisdiction occurred in 2012 doesn't mean it's any less of value today in your consideration of the application. Because if you didn't have subject matter jurisdiction in 2012, you don't have it in 22. Thank you, Your Honors. Thank you both. Thank you. And we will take the matter under advisement. Thank you.  Thank you. The next case is United States v. Watts. Hey, John. Nice job. Thank you. Do we have anybody second? I'm sorry. May it please the court. My name is Joe Ryan. I was the CGA lawyer appointed to represent Mr. Watts in the proceedings below. And my purpose here is to convince Your Honors that Mr. Watts was wrongfully convicted upon a manufactured crime that was never charged and never defended in this case. And you say, why? Mr. Watts was disembarking from a cruise ship with his wife and arrested on this indictment. He had never been interviewed, notified at all that this indictment would accuse him of engineering a pump and dump scheme. And as the proceedings evolved, in his pretrial motion, he disclosed that I lost $15 million in this company. And I'm going to prove that to the jury. I had no intent to defraud investors. And when the government heard that motion, what did they do? They doubled down to convict him. Doubled down. They had no pump and dump scheme case. Their own witness never testified that we raised stocks to the high level of these worthless companies to defraud people and enrich ourselves. No such testimony. They had a second witness, Robert Kleckman. He says, I never intended to defraud investors. That's the two chief prosecution witnesses. So when it came to summation, the government had to come to the realization that their so-called pump and dump scheme, which is specified in the indictment, is not going to make it. So what did they do? They said, he's guilty of all of these charges because of a consulting agreement. One of 700,000 documents given to the defense. And this is to wrongly and unlawfully release 262,000 restricted shares so they can be traded to the public. But the government knew from a legal opinion that brokerage firms relied upon that this was not a phony issuance of $262,000. The lawyers in Exhibit 79 said specifically that this was a sale of stock that Mr. Watts had that he bought from the company when he originally invested his $50 million. And he was selling it to Mr. Kleckman for consideration because Mr. Kleckman, who was a $600,000 shareholder in the company, was obligated to attract investors for the next year. And he had every reason to do that because if this company succeeded, he did too. He was a 600,000 share investor in this company. Isn't that, and please help me understand the record better. Isn't that just your client's version of the facts? But the government's version of the facts was that the consulting arrangement was a means by which Mr. Max could be paid to effectuate the manipulation of the HECC stock. There is no question in this case that Mr. Watts gave the stock, sold the stock to Mr. Gleckman for the purpose of raising money because this was an oil crisis crisis and he didn't have the money. And Mr. Watts testified, we didn't have the money. I had stock and it had value, okay? So Mr. Gleckman is going to take the stock and he's going to sell it and he's going to pay Max because Max is saying, hey, I don't want your stock anymore. This stock is going down. Well, why isn't that from the government's, why wouldn't that mean this is not a constructive amendment of the indictment. This is just the means by which the stock manipulation scheme was effectuated. You had to pay a co-conspirator. The stock manipulation in this case is match trades. You create fictional trades so that investing public says, hey, this is a hot company, okay? They had no evidence of that, no evidence of that. And Mr. Gleckman said, and he's the one who's selling the stock and paying Max's firm to continue the marketing. Gleckman says, this was not intended to defraud investors. I was selling this stock, okay, to get cash because Max was demanding cash because this stock was going down. And here we have an indictment that says that we're manipulating the stock up to defraud the investors. This is a company with $200 million in oil reserves and everything else, 130 wells and gallops in the base, a real company. A proper dump scheme is a company with little or no value.